# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| ROBERT A. FRAZER,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 18-CV-2015-LTS<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Robert A. Frazer seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Frazer argues that the administrative law judge (ALJ) erred in determining Frazer's residual functional capacity (RFC)[1] for social functioning because the ALJ's determination was not supported by some medical evidence nor substantial evidence in the record. Frazer also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **reversing** the ALJ's decision **and remanding** for further proceedings.

## I. BACKGROUND[2]

Frazer filed an application for SSI benefits on February 24, 2014, alleging his

---

[1] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[2] For a more thorough overview, see the Joint Statement of Facts (Doc. 15).

schizophrenia and physical issues caused disability. AR 62, 163-71.[3] His application was denied initially in January 2015 and on reconsideration in April 2015. AR 61, 91-96, 101-04. The initial review was based on mental RFC (MRFC) evaluations by consultative examiner Ralph Scott, PhD, in September 2014, and by non-examining state agency consultant Scott Shafer, PhD, in October 2014. AR 70-73, 305-08. Dr. Scott diagnosed Frazer with paranoid schizophrenia with obsessive compulsive disorder features and found this condition "severely limit[ed] his ability to effectively work with others." AR 307. Dr. Scott found Frazer had a fair ability to "[i]nteract appropriately with accommodative supervisors," but only a marginally fair to poor ability to interact with coworkers and the general public, even with accommodations. AR 308. Dr. Scott noted Frazer could quite possibly succeed in at least part-time employment "under highly accommodative conditions and counseling focused on specific objectives." AR 307. During the initial review, Dr. Shafer considered Dr. Scott's evaluation (giving it great weight) and found it "did not indicate limitations at a level that would preclude employment." AR 69, 72-73. Dr. Shafer also considered Frazer's activities of daily living, his employment history, and his improvement with medical treatment. AR 72-73. Dr. Shafer concluded Frazer was markedly limited in his ability to interact with the general public, and moderately limited in both his ability to "accept instructions and respond appropriately to criticism from supervisors" and to "get along with coworkers and peers without distracting them or exhibiting behavioral extremes." AR 71. Dr. Shafer explained further that Frazer could "interact appropriately with coworkers and supervisors on at least a limited basis." AR 72.

In connection with the reconsideration review, additional MRFC opinions were provided in April 2015 by consultative examiner Carroll Roland, PhD, and in April 2015 by non-examining state agency consultant Russell Lark, PhD. AR 85-88, 373-379. Dr.

---

[3] "AR" refers to the administrative record below, filed at Docs. 11-1 to 11-7.

Roland found that Frazer had marked limitations in his ability to interact appropriately with both coworkers[4] and the public, mild limitations in his ability to interact with supervisors, and moderate limitations in his ability to respond appropriately to changes and stress at work. AR 378. Dr. Roland's findings were based on Frazer's "ongoing auditory hallucinations consistent with paranoid schizophrenia." *Id*. Dr. Roland provided no additional information about Frazer's functional limitations. Dr. Lark gave partial weight to Dr. Roland's opinion, noting Frazer did not allege a worsening of symptoms, and reaffirmed Dr. Scott's MRFC. AR 88.

At Frazer's request, an administrative hearing was held before an ALJ in February 2017, during which Frazer and a vocational expert (VE) testified. AR 15, 39-40. On May 3, 2017, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[5] to find Frazer not disabled. AR 15-33. The ALJ found that Frazer last engaged in substantial gainful employment in February 2014, that he suffered from severe impairments of schizophrenia and degenerative disc disease of the back, and that these impairments did not meet or equal a listing. AR 17-21. The ALJ then determined that Frazer had the RFC to perform light work with environmental limitations and also limited him to simple and routine instructions and tasks, and "[o]nly occasional interaction with the general public, coworkers, and supervisors." AR 21. Based on this RFC, the ALJ found Frazer could not perform his past relevant work (as a dishwasher

---

[4] For interaction with coworkers, Dr. Roland checked boxes for both moderate and marked limitations. AR 378.

[5] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." ***King v. Astrue***, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005) (quoting ***Eichelberger v. Barnhart***, 390 F.3d 584, 591 (8th Cir. 2004)).

and construction laborer), but he could perform other work as a collator operator, retail price marker, and bench assembler. AR 31-32. Accordingly, the ALJ determined Frazer was not disabled. AR 33.

The Appeals Council denied Frazer's request for review on January 8, 2018 (AR 1), making the ALJ's decision that Frazer was not disabled the final decision of the Commissioner. *See* **20 C.F.R. § 416.1481**. Frazer filed a timely complaint in this court on February 27, 2019 (Doc. 4), seeking judicial review of the Commissioner's decision. *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 16, 17, 18), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.  DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Frazer argues that the ALJ's RFC determination is not supported by some medical evidence and that the ALJ erred by failing to adequately limit Frazer's contact with the public and coworkers. Frazer also argues the ALJ's appointment to the position violates the Appointments Clause of the United States Constitution. I will address each of these arguments in turn.

## A. The ALJ's RFC Determination

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)). Put another way, an ALJ may impose the same or greater restrictions, but not lesser restrictions, than those contained in the medical opinions of record. *Id*. at 711-12.

Here, the MRFC opinions in the record found marked limitations in Frazer's ability to interact with the public, moderate to marked limitations in his ability to interact with coworkers, and no more than moderate limitations in his ability to interact with supervisors:

- Dr. Scott (consultative examiner) found Frazer's ability to interact with **coworkers and the public** was "**marginally fair to poor even with accommodations**," as compared to a fair ability to "[i]nteract appropriately with accommodative supervisors" (AR 308);

- Dr. Roland (consultative examiner) found **marked limitations** in Frazer's ability to interact with both the **public and coworkers**, but only mild limitations in his ability to interact with supervisors (AR 378);

- Dr. Shafer (non-examining state agency reviewer), after giving great weight to Dr. Scott's opinion, found Frazer had **marked limitations** in his ability to interact with the **public**, and only moderate limitations in his ability to deal with supervisors and coworkers (AR 71-72);

- Dr. Lark (non-examining state agency reviewer), after considering and giving partial weight to Dr. Roland's opinion, affirmed Dr. Shafer's conclusions of **marked limitations** for **public** interaction and moderate limitations in interacting with coworkers and supervisors (AR 86-88).

5

The ALJ discussed each of these medical opinions (AR 28-30), and despite noting that all four opinions found greater limitations in Frazer's ability to interact with the public compared to coworkers and supervisors, the ALJ's RFC determination made no distinction between Frazer's ability to interact with the public versus coworkers and supervisors. AR 21. Rather, the ALJ limited Frazer to only occasional contact with all three groups. *Id.*[6]

The Commissioner urges the court to consider the narrative explanation of Dr. Shafer's RFC determination, and not the levels of limitation Dr. Shafer used to summarize Frazer's abilities to interact with others. *See* Doc. 17 at 15-16; AR 71-72. The narrative section of a reviewing physician's MRFC assessment form, rather than the check-box section on the form, may support an ALJ's ultimate RFC determination. *See* **Robertson v. Colvin**, No. 4:12-cv-1419-DGK-SSA, 2014 WL 106117, at *5-6 (E.D. Mo. Jan. 10, 2014). In *Robertson*, a reviewing physician listed the claimant was moderately limited in her ability to interact with the general public, coworkers, and supervisors in the check-box portion of the MRFC. *Id.* at *5. The physician "also clarified the extent of these limitations in the narrative section of the MRFC" by stating the claimant could "interact adequately with peers and supervisors," but made no mention of the claimant's ability to interact with the public. *Id.* at *6. This narrative supported the ALJ's RFC determination, which excluded any work involving public contact but placed no restriction on claimant's interactions with coworkers and supervisors. *Id.* at *5-6 (also noting that a different medical opinion in the record, which found claimant had no significant limitations in interacting with coworkers and supervisors, helped provide substantial evidence for the ALJ's decision to not limit claimant's interactions with coworkers and supervisors).

---

[6] The VE testified that if the ALJ's ultimate RFC determination were altered to include no contact with the public (and leaving the same limitation of only occasional interaction with coworkers and supervisors), it would preclude Frazer from performing other work. AR 57-58.

Here, Dr. Shafer rated Frazer's abilities to interact with others as "marked" for public interactions and "moderate" for coworker and supervisor interactions. AR 71-72. Dr. Shafer's narrative[7] explained Frazer could "interact appropriately with coworkers and supervisors on at least a limited basis," but made no further comment on Frazer's ability to interact with the public. AR 72. The only plausible interpretation is that Dr. Shafer (and Dr. Lark by affirming the opinion on reconsideration) found Frazer has greater limitations in his ability to interact with the public compared to his ability to interact with supervisors and coworkers. The ALJ recognized this distinction, noting that Dr. Shafer found "[Frazer's] ability to interact appropriately with the general public is markedly limited, but he can interact appropriately with coworkers and supervisors on at least a limited basis." AR 29. Nevertheless, the ALJ failed to impose greater limitations on Frazer's ability to interact with the public than his ability to interact with coworkers and supervisors. Dr. Shafer's narrative does not support this conclusion. The Commissioner also argues that the ALJ's determination is supported by Dr. Shafer's failure to state that Frazer is precluded from having any contact with the public. *See* Doc. 17 at 15. The Commissioner cites no authority to support this proposition, and I find it contrary to *Robertson*. *Cf. Robertson*, 2014 WL 106117, at \*6 (medical opinion narrative supported lesser restriction than the check-box portion of the opinion, but only for the functional limitations actually discussed in the narrative).

I considered the possibility that the ALJ intended that "only occasional contact" would account for Frazer's marked limitations in interacting with the public and that the ALJ thereby imposed greater limitations on Frazer's abilities to interact with coworkers

---

[7] Later in the MRFC, Dr. Shafer's "additional explanation" narrative stated that Frazer could "perform simple, repetitive tasks not requiring sustained attention with limited contact with others." AR 72-73. This reference to contact with others appears to relate to Frazer's mental ability to perform tasks, and not his ability to function socially. Also, the ALJ did not rely on this statement in making the RFC determination, which the Commissioner appears to concede in its brief by referring only to Dr. Shafer's narrative discussed above (that Frazer could interact appropriately with coworkers and supervisors on a limited basis). *See* Doc. 17 at 15.

7

and supervisors than were found by Dr. Shafer. This does not appear to be the case, however, based on the ALJ's opinion and the Commissioner's arguments. It appears the ALJ rejected the medical opinions that found Frazer was more limited (markedly so) in his ability to interact with the public, even the opinions given significant weight by the ALJ. Instead, it seems the ALJ found Frazer had only moderate limitations in his ability to interact with the public. *See* AR 20-21 (in discussing the applicable listing at step 3, the ALJ found Frazer had only "moderate limitation in interacting with others"); AR 21, 29 (limiting Frazer to occasional contact in all areas of social functioning, despite noting Dr. Shafer found Frazer had marked limitations in public interactions but that his moderate limitations in other areas would allow him to have limited contact with supervisors and coworkers). The ALJ's decision to allow occasional contact with the public fails to sufficiently address Frazer's marked limitations in that area of functioning. *Cf. Wikstrom v. Colvin*, No. C14-4032-MWB, 2015 WL 757823, at *3, 8-11 (N.D. Iowa Feb. 23, 2015) (RFC determination that claimant could "interact appropriately with others on a limited basis, but [could have] no direct contact with the public" supported by reviewing physician's opinion (finding marked limitations in public interaction and moderate limitations in ability to work with others without distraction), combined with a portion of examining physician's vague opinion (claimant would have problems interacting appropriately) and review of medical evidence), *report and recommendation adopted*, 2015 WL 3509281 (June 4, 2015); *Robertson*, 2014 WL 106117, at *5-6 (for social functioning, ALJ restricted claimant's RFC to only occasional contact in area where claimant had moderate limitations, but precluded any contact in area where claimant had marked limitations); *Potts v. Astrue*, No. 4:09-CV-64 CEJ, 2010 WL 889875, at *3, 6-7 (E.D. Mo. 2010) (ALJ's decision to limit claimant to no more than occasional contact with coworkers and the public was supported by medical opinions that claimant had moderate (not marked) limitations in ability to interact with the public).

8

Under the deferential standard of review discussed above, a reviewing court must affirm an ALJ's findings "if it is possible to draw two inconsistent positions from the [medical opinion] evidence and one of those positions represents the ALJ's findings." *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010). The court in *Moore* affirmed an ALJ's determination that the claimant could interact with supervisors, coworkers, and the general public on an "infrequent basis." *Id*. At 602. Three medical source opinions found, respectively, that the claimant had (1) no ability to deal with the public or supervisors and a "poor" ability to deal with coworkers; (2) only "slight" limitations in his abilities to interact with others; and (3) moderate limitations in interacting with supervisors and coworkers and marked (but not extreme) limitations in interacting with the public. *Id*. at 602-03. The court concluded that although one interpretation of these opinions supported the claimant's position that he could not interact with others in a work setting, the opinions also supported the ALJ's finding that the claimant could interact with others on an infrequent basis. *Id*. at 603 (noting the latest opinion did not find claimant had "extreme" limitations). Here, however, none of the medical opinions supported the ALJ's determination about Frazer's ability to interact with the public.[8] Because the medical opinions in this case all found Frazer more limited in his ability to interact with the public, the ALJ should have included greater limitations on Frazer's

---

[8] It also appears *Moore* is distinguishable on other grounds. First, the claimants' severe impairments differ in nature: the *Moore* claimant suffered from borderline intellectual functioning, learning disorder, oppositional defiant disorder, and adjustment disorder with depression, while Frazer suffers from schizophrenia that causes paranoia and auditory hallucinations. *See Moore*, 623 F.3d at 601; AR 17, 23-27. In addition, the court in *Moore* relied on more significant evidence in finding substantial evidence supported the ALJ's RFC determination than relied upon by the ALJ in this case. *Compare Moore*, 623 F.3d at 603 (claimant able to maintain appropriate behavior around peers, had a good sense of humor and laughed easily, attended church and was involved in "church family" and sports with friends, and engaged in some kitchen work, basketball, and card-playing while in prison), *with* AR 20, 22-23, 30-31 (Frazer lived with his girlfriend, occasionally ate lunch at the Salvation Army and visited with his few friends, shopped alone or with his parents or girlfriend, attended medical appointments alone, did not attend church, and did not belong to any organized groups).

ability to interact with the public compared to his ability to interact with coworkers and supervisors. *See Hutsell*, 259 F.3d at 711-12.

Although the Commissioner is correct that "there is no requirement that an RFC finding be supported by a specific medical opinion," *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (*see* Doc. 17 at 17), the ALJ's conclusion that Frazer could have the same level of contact with the general public as with coworkers and supervisors is not supported by some medical evidence. Unlike *Hensley*, where the record contained no medical opinions, the ALJ in this case gave significant weight to the state agency opinions, but then failed to account for their conclusions that Frazer had marked limitations in his ability to interact with the public. An ALJ may not impose fewer limitations than found in all the medical-opinion evidence and thereby formulate his own medical opinion. *See Hutsell*, 259 F.3d at 711-12 (finding some medical evidence did not support the ALJ's RFC determination—that claimant was only precluded from performing complex work that required abstract thinking or close contact with others—when medical opinion evidence found claimant was more restricted in that area of functioning); *Peterson v. Colvin*, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once"); *cf. Julin v. Colvin*, 826 F.3d 1082, 1089 (8th Cir. 2016) (some medical evidence supported the ALJ's RFC determination when it incorporated some limitations found by the treating source and some limitations found by the state agency consultants); *Kamann v. Colvin*, 721 F.3d 945, 948-51 (8th Cir. 2013) (some medical evidence supported the ALJ's RFC finding when it was consistent with the state agency consultant's opinion); *Stormo v. Barnhart*, 377 F.3d 801, 806-807 (8th Cir. 2004) (same); *cf. also Krogmeier v. Barnhart*, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (some medical evidence supported the ALJ's RFC finding when it was consistent with the

10

consultative examiner's opinion); *Strongson v. Barnhart*, 361 F.3d 1066, 1070-72 (8th Cir. 2004) (same). In this case, the ALJ's conclusion that Frazer had the RFC to have only occasional contact with the public is not supported by some medical evidence.

Frazer also generally challenges the ALJ's evaluation of the medical opinions. The ALJ gave partial weight to Dr. Scott's opinion, based on Frazer's treatment records and activities of daily living (AR 28), and little weight to Dr. Roland's opinion "as it was not consistent with the record as a whole" (including Frazer's activities of daily living, examination records, improvement with counseling, statements from his mother, work history, and interest in seeking employment).[9] AR 30. These may represent good reasons for the ALJ to give less weight to the medical opinions. *See Wright v. Colvin*, 798 F.3d 847, 853 (8th Cir. 2015) (ALJ may give little weight to a medical opinion that is not supported by the record); *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (ALJ may give less weight to medical opinion that is inconsistent with claimant's activities of daily living). It is not clear that would be the case here. *See Hutsell*, 259 F.3d at 711-13 (claimant with mental disorder may have lower functional abilities than the claimant asserts; periods of remission with schizophrenia does not mean disability ended; doing well in context of mental health treatment does not equate to ability to work; minimal daily activities (performing household chores, shopping for groceries, and occasionally visiting friends or socializing at local senior center) could be consistent with chronic schizophrenia and not indicative of functional abilities to work); *see also Almanza v. Barnhart*, No. C05-3069-MWB, 2006 WL 2591477, at *16-17 (N.D. Iowa Sep. 11,

---

[9] The ALJ relied on: (1) Frazer being able to go places alone and shop in stores, and daily activities that included sometimes having lunch at the Salvation Army, visiting with family and friends, and going to auctions with his mother (AR 22-23, 30); (2) doing well in treatment, although multiple treatment records noted ongoing paranoia and examinations showed indications of delusions or auditory hallucinations (AR 24-27); (3) his mother's statements indicating that Frazer could work "when he is not worried about what others think or say about him" (supporting the need for limitations in social interaction) (AR 28); and (4) Frazer expressing a desire to work (AR 30).

11

2006) (noting the claimant's periods of doing well often involved times when she was under less stress and had assistance). Even if substantial evidence supports the ALJ's decision to give these opinions less weight, the ALJ still erred in determining Frazer's RFC ability to interact with the public. On remand, I recommend the ALJ reevaluate each of the medical opinions and other evidence in the record in determining Frazer's RFC.

Because all medical opinions in the record found Frazer more limited in his ability to interact with the public, the ALJ erred in determining Frazer is equally limited in all aspects of social functioning. Thus, the ALJ erred in determining Frazer's RFC. I recommend that the district judge find that some medical evidence does not support the ALJ's RFC determination.

### B. *Appointments Clause*

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

The Supreme Court recently held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause, as they "exercise[] significant authority pursuant to the laws of the United States." *Id.* The Court relied on *Freytag v. Commissioner*, 501 U.S. 868 (1991), in which it held special trial judges of the United States Tax Court were inferior officers subject to the Appointments Clause, noting that both SEC ALJs and Tax Court special trial judges: (1) serve career appointments "to a position created by statute, down to its 'duties, salary,

12

and means of appointment'"; (2) take testimony during hearings and may take pre-hearing depositions; (3) administer oaths, rule on motions, and generally regulate the court during a hearing; (4) rule on the admissibility of evidence; (5) have the power to enforce compliance with discovery, including to punish contempt by excluding people from the courtroom; and (6) issue opinions detailing factual findings and legal conclusions and ordering appropriate remedies. 138 S. Ct. at 2052-54 (quoting *Freytag*, 501 U.S. at 878). The Court ordered that the petitioner receive a new administrative hearing from a properly appointed official, noting that the petitioner "timely challeng[ed]" the validity of the appointment before the administrative agency. *Id.* at 2055. The petitioner had not raised the Appointments Clause challenge to the ALJ at any point during the "nine days of testimony and argument," but after the ALJ rendered an unfavorable decision, the petitioner appealed to the SEC and argued "that the administrative proceeding was invalid because [the ALJ] had not been constitutionally appointed." *Id.* at 2050.

Relying on the reasoning in *Lucia*, Frazer argues Social Security ALJs are inferior officers subject to the Appointments Clause, and that his case should be remanded for a new hearing before a constitutionally appointed ALJ. Frazer never raised this issue during the administrative proceedings. Thus, the Commissioner argues that Frazer has forfeited his Appointments Clause challenge.

In *Freytag*, the petitioners challenged the appointment of the special trial judge for the first time on judicial review—indeed, the petitioners had consented in the administrative proceedings to trial by a special trial judge. 501 U.S. at 871-72. Before the Supreme Court, they argued that Appointments Clause challenges as a class cannot be forfeited or waived. *Id.* at 893 (Scalia, J., concurring). The majority opinion did not address this argument, instead "exercis[ing] its discretion to consider" the Appointments Clause challenge (which it classified as a "nonjurisdictional structural constitutional objection[]"). *Id.* at 878-79 (majority); *id.* at 893 (Scalia, J., concurring). The Court noted the Appointments Clause challenge was "neither frivolous nor disingenuous" and

13

went "to the validity of the Tax Court proceeding." *Id.* at 879 (majority). The Court therefore concluded this was "one of those rare cases in which [a court] should exercise [its] discretion." *Id.* The Eighth Circuit has interpreted *Freytag* as creating a discretionary rule in which "a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge." ***NLRB v. RELCO Locomotives, Inc.***, 734 F.3d 764, 795 (8th Cir. 2013); *see also* ***Jones Bros., Inc. v. Sec. of Labor, Mine Safety, & Health Admin.***, 898 F.3d 669, 677-78 (6th. Cir. 2018) (excusing forfeiture of Appointments Clause challenge when the plaintiff noted a circuit split on the issue before the administrative agency (Federal Mine Safety and Health Review Commission) but declined to "press" the issue); ***Turner Bros., Inc. v. Conley***, 757 F. App'x 697, 699-700 (10th Cir. 2018) (holding claimant forfeited Appointments Clause challenge based on *Lucia* by failing to raise it to the agency (the Department of Labor Benefits Review Board)); ***Kabani & Co., Inc. v. SEC***, 733 F. App'x 918, 919 (9th Cir. 2018) ("[P]etitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency [the SEC].").

The vast majority of courts to address this issue have held that the claimant forfeited his or her *Lucia*-based Appointments Clause challenge by failing to raise it to the Social Security Administration, and the courts have declined to excuse the forfeiture. *See, e.g.,* ***Morrow v. Berryhill***, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); ***Kline v. Berryhill***, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); ***Hutchins v. Berryhill***, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); ***Diane S.P. v. Berryhill***, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); ***Valasquez ex rel. Valasquez v. Berryhill***, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); ***Flack v. Comm'r of Soc. Sec.***, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16,

14

2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). A few courts, however, have found Social Security claimants do not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See* ***Ready v. Berryhill***, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); ***Culclasure v. Comm'r of Soc. Sec. Admin.***, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); ***Bradshaw v. Berryhill***, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); ***Probst v. Berryhill***, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); ***Bizarre v. Berryhill***, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); ***Fortin v. Comm'r of Soc. Sec.***, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D. Mich. Mar. 29, 2019). ***Muhammad v. Berryhill***, No. CV 18-172, 2019 WL 2248694, at *11-12 (E.D. Pa. Nov. 2, 2018), *report and recommendation rejected*, *id.* at *3-7 (May 23, 2019).

I decline to follow decisions from district courts outside the Eighth Circuit. Every district court in the Eighth Circuit to address the issue (including the Northern District of Iowa) has found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited. *See* ***Kesterson v. Berryhill***, No. 18-CV-2048-LRR, 2019 WL 1938809, at *18 (N.D. Iowa May 1, 2019) (Roberts, J.) (report and recommendation); ***Sexton v. Berryhill***, No. 18-CV-1024-LTS, 2019 WL 1495286, at *15 (N.D. Iowa Apr. 4, 2019) (Roberts, J.) (report and recommendation); ***Hernandez v. Berryhill***, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); ***Murphy v. Berryhill***, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.); ***Kimberly B. v. Berryhill***, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); ***Audrey M.H. v. Berryhill***, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); ***White v. Berryhill***, No. 18-CV-2005-LTS, 2019 WL 586757, at *15 (N.D. Iowa Feb. 13, 2019) (Roberts,

15

J.), *report and recommendation adopted*, 2019 WL 1239852 (N.D. Iowa Mar. 18, 2019); *Catherine V. v. Berryhill*, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*)*; *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); *Davis v. Comm'r of Soc. Sec.*, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sep. 10, 2018) (Reade, J.); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018) (Reade, J.).[10] I adopt the reasoning of these decisions (and of the majority of courts to address the issue). Accordingly, I recommend the district judge reject Frazer's Appointments Clause challenge.

### III. CONCLUSION

I recommend that the district court judge **reverse** the decision of the Commissioner, enter judgment in favor of Frazer, and **remand** to the Social Security Administration for further proceedings consistent with this report and recommendation.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.

---

[10] A court in the District of Nebraska noted that Appointments Clause challenges are deemed to be "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below," but ultimately, the court did not address the merits of the Appointments Clause issue, as the court was already remanding on other grounds and noted that the claimant could raise the issue on remand to the Social Security Administration. *See Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018)

16

Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

    **DATED** this 27th day of June, 2019.

*[signature: Kelly K.E. Mahoney]*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa